UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY WOODARD,

       Plaintiff,

v.                                  Case No. 2:06-cv-284
                                  HON. ROBERT HOLMES BELL

DOUGLAS WEBERG, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Jeffery Woodard filed this *pro se* prisoner civil rights action pursuant to 42 U.S.C. § 1983 against Resident Unit Officer Douglas Weberg and Assistant Resident Unit Supervisor Thomas Salo.  Although both Defendants are employed at Alger Maximum Correctional Facility (LMF) by the Michigan Department of Corrections (MDOC), Plaintiff makes it clear in his response to Defendants' Motion for Summary Judgment that he is suing Defendants solely in their individual capacities.  Plaintiff alleges Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment through denial of toilet paper and a towel.  Plaintiff is seeking compensatory and punitive damages in the amount $250,000.

Plaintiff claims that on March 10, 2006, he was placed on a ten day "toilet tissue restriction" by Defendant Weberg.  Subsequently, on April 3, 2006, Plaintiff was allegedly placed on a ten day towel restriction by Defendant Weberg.  Plaintiff claims the toilet paper and towel restrictions were enforced long after the ten day time period had passed and neither restriction tag was removed from his cell door until April 28, 2006.  Plaintiff avers that during this time period he

was not provided with any sanitary substitutions and was left with no way to clean himself after using the toilet or dry himself after showering. Plaintiff also alleges the toilet paper restriction was not properly sanctioned by the Warden or Deputy Warden and cites the Warden's Step II response to Plaintiff's grievance. The Warden's Step II response states, "Toilet tissue was misused in great abundance by you, so staff agreed to monitor your usage of it, but there was no restriction placed on you."

Plaintiff states he is a handicapped person with only one arm and claims that during the period from March 10, 2006, to April 28, 2006, he was not provided with any toilet paper upon request to use the bathroom and was forced to use his hand to cleanse himself. Plaintiff claims that this situation was highly unsanitary and resulted in his contraction and diagnosis of H Pylori. Plaintiff also alleges he was not provided with a towel after showering and was forced to soak up the water on his body with his clothes. Plaintiff claims that remaining in damp clothes for long periods of time could have resulted in bacterial infections of the skin. Plaintiff does not allege that any such infection occurred.

Finally, Plaintiff alleges that he made numerous attempts to notify Defendant Salo, through the filing of grievances and kites, that the time period for the restrictions had lapsed. Plaintiff claims that despite having notice of the expired restrictions, Defendant Salo made no attempts to rectify the situation.

Defendants agree that Plaintiff was placed on toilet paper and towel restrictions on the dates stated by Plaintiff. Defendants state that Plaintiff was validly placed on ten day toilet paper restriction as a result of his misuse of toilet tissue. Defendants claim that Plaintiff, while on mattress restriction, used "thousands of feet" of toilet paper to create a makeshift mattress, which constituted a fire hazard. Defendants provide a "Restriction of Segregation Property and Privileges" form signed

- 2 -

by the Deputy Warden, showing that Plaintiff was placed on toilet paper restriction from March 10, 2006, until March 20, 2006.  Defendants claim that Plaintiff was always provided with adequate toilet paper upon his request to use the bathroom and the restriction was terminated well before April 28, 2006.

Defendants claim that on April 3, 2006, Plaintiff was placed on a twelve day towel restriction for covering his cell door window with his state issued towel in violation of prison policy. Defendants state that prisoners on towel restriction are provided with a clean towel at shower time which they must return before returning to their cell.  Defendants claim this restriction was also terminated well before April 28, 2006.

Finally, Defendant Salo states he was only contacted once, on April 28, 2006, by Plaintiff regarding the lapse of the toilet paper and towel restriction periods. Defendant Salo claims that he conducted a brief investigation and determined that the restriction tags were no longer on Plaintiff's cell door, nor were the restrictions being imposed on that date.

Presently before the Court is the Defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response and the matter is ready for decision.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff contends his Eighth Amendment right prohibiting cruel and unusual punishment was violated. Traditionally, the cruel and unusual punishment clause was interpreted to prohibit barbarous or shocking forms of punishment. Over the years, the concept of cruel and unusual punishment has been expanded to encompass punishments which are unconscionably excessive in relation to the offense committed. *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Furthermore, punishment which is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337 (1981). *See also, Gregg*, 428 U.S. at 173.

The Eighth Amendment's proscription against cruel and unusual punishment has also been extended to require certain minimal living conditions within the prison environment. Under the recently clarified "deliberate indifference" standard applicable to such claims, plaintiff must establish both that he is being denied "the minimal civilized measure of life's necessities" and that

the defendants have been deliberately indifferent to plaintiff's needs. *Wilson v. Seiter*, 501 U.S. 294 (1991).

This is a two-part test involving both an objective and a subjective element.  First, plaintiff must establish that he is being denied a single, identifiable necessity of civilized human existence. *Wilson*, 501 U.S. at 298.  In *Rhodes*, the Supreme Court explained:

> In *Estelle v. Gamble, supra*, we held that the denial of medical care is cruel and unusual because, in the worst case, it can result in physical torture, and even in less serious cases, it can result in pain without any penological purpose.  In *Hutto [v. Finney*, 437 U.S. 678 (1978)], the conditions of confinement in two Arkansas prisons constituted cruel and unusual punishment because they resulted in unquestioned and serious deprivations of basic human needs.  Conditions other than those in *Gamble* and *Hutto*, alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities.  Such conditions could be cruel and unusual under the contemporary standard of decency that we recognized in *Gamble*.  But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Rhodes*, 452 U.S. at 347.

The Eighth Amendment is concerned only with "deprivations of essential food, medical care or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348.  One court has included such basic human needs as minimally adequate food, clothing, shelter, sanitation, medical care, and personal safety within the "core" requirements of the Eighth Amendment. *Grubbs v. Bradley*, 552 F. Supp. 1052, 1222 (M.D. Tenn. 1982).  Plaintiff cannot rely upon the overall conditions of his confinement to establish an Eighth Amendment violation unless he can demonstrate that, in combination, the conditions of his confinement deprived him of a single, identifiable human need. *Wilson*, 501 U.S. at 304.

The subjective component of the deliberate indifference standard "mandate[s] inquiry into a prison official's state of mind." *Wilson*, 501 U.S. at 298-299.  Only that conduct which is wanton or deliberately indifferent to plaintiff's needs constitutes conduct subject to scrutiny under the Eighth Amendment.  *Id.* at 302-303.

> Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however.  ... [C]onduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.  This reading of the Clause underlies our decision in *Estelle v. Gamble, supra,* at 105-106, which held that a prison physician's 'negligen[ce] in diagnosing or treating a medical condition' did not suffice to make out a claim of cruel and unusual punishment.  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Wilson*, 503 U.S. at 298-299.

Conduct which is negligent or even grossly negligent does not violate the Eighth Amendment.  *See Walker v. Norris*, 917 F.2d 1449, 1454 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988).  In *Whitley v. Albers*, 475 U.S. 312 (1986), a case in which a prisoner was shot by a prison guard during an effort to quell a prison disturbance, the Supreme Court equated the standard with conduct which "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* at 321.  In short, in order to satisfy the subjective element of the *Wilson* test, the official's conduct "must demonstrate deliberateness tantamount to an intent to punish." *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993).

An affidavit by a prisoner explicitly contradicting the defendant's version of the facts, when the facts may support an Eighth Amendment claim, raises genuine issues preventing the

issuance of summary judgment.  *Moore v. Holbrook*, 2 F.3d 697, 701-02 (6th Cir. 1993).[1]  For

example, *see Berryman v. Regiler*, 1995 WL 31575, January 26, 1995 (an unpublished opinion, a

copy of which is attached). In *Berryman*, the court held:

> Mr. Berryman's pleadings and affidavits in opposition to defendants'
> motion for summary judgment do establish a genuine issue of
> material fact as to both his First and Eighth Amendment claims.
> Plaintiff has repeatedly contended that he was denied medical care for
> his injuries and that defendants' actions were in retaliation for his
> lawsuit against Nurse Fox.  The plaintiff has provided detailed
> testimony about the facts underlying his claim.  He describes in his
> affidavits how he went to the medical clinic for treatment and was
> forced to sit in a chair in the waiting room without receiving
> treatment.  When he complained, he says that he was told, "there are
> other prisoners who need real treatment."  Plaintiff avers that he was
> told by Nurse Kukla that she would not treat him because of that
> "bastard lawsuit against her friend and fellow Nurse Linda Fox."
> Plaintiff also testifies that he was denied treatment by Dr. Regiler
> who said to him that "he would NOT treat the Plaintiff because he
> [sic] Plaintiff had made allegations against Nurse Linda Fox and if he
> needed medical treatment he should look to the V.A. to get it."
> Finally, the plaintiff denies that he was ever treated by Nurse
> Holzhuer.  He contends in his testimony that the medical records are
> forgeries, explaining that a nursing supervisor does not make routine
> progress reports and that it stretches the bounds of credulity to ask the
> court to believe that a nursing supervisor gave him treatment.
>
> The defendants, for their part, have repeatedly urged that they acted
> in good faith and have submitted medical records to substantiate their
> claim that they treated plaintiff.  We thus have a situation where the
> sworn affidavits of each party contradict one another about
> underlying events which are relevant to the claim.  In such a case, a
> district court should not grant summary judgment because to do so
> would require the court to go behind the affidavits and make
> credibility judgments about the witnesses and their testimony without
> a trial. . . .   In sum, because plaintiff and defendants have both
> produced colorable evidence disputing virtually all of the essential
> facts surrounding plaintiff's deliberate indifference claim as well as
> his retaliation claim, it is impossible to determine, without choosing
> between these contrasting and supported factual accounts, whether

---

[1]The allegations in a verified complaint have the same force and effect as an affidavit for purposes of
responding to a motion for summary judgment.  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

> defendants refused to provide plaintiff with medical care or not, and
> whether this refusal stemmed from their desire to punish him because
> of his lawsuit against Nurse Fox. (citations to the record omitted)

*Berryman*, 1995 WL 31575 at p. 3.

This case is similar to *Berryman* in that the parties offer conflicting versions of the incident in question.  Plaintiff contends that once he was placed on toilet paper and towel restrictions, he never received either of the items, upon request or otherwise.  He also states that he was not provided any sanitary substitute.  Defendants, however, state that Plaintiff was given a towel for showering and toilet paper for use upon request.  The evidence is also conflicting regarding the length of time the restrictions were effectively in place.  According to Plaintiff, he was without toilet paper or toilet paper substitute for a term of forty-nine days and without a towel for twenty-five days.  Defendants claim that the toilet paper restriction term was only ten days and the towel restriction term twelve days, during which time Plaintiff did receive toilet paper upon request and a towel for showering.

Plaintiff presents only his own affidavits as evidence at this time, but states that there is additional evidence in the sole possession of MDOC and LMF to corroborate his facts.  Plaintiff states that his assertion that he was completely without toilet paper and towels can be proved via the Unit Log book, Special Housing Unit Record and the floor tape/camera footage.  Defendants present a Restriction of Segregation Property and Privileges Review Sheet with signatures and dates to prove that Plaintiff's restrictions were reviewed every seven days by the Warden or Deputy Warden.  This sheet, without more, is highly inconclusive as it states no prisoner names or numbers, nor does it state which restrictions are being reviewed.

Based on the facts presented, a jury could conclude that Plaintiff was denied "the minimal civilized measure of life's necessities" and Defendants were deliberately indifferent to

Plaintiff's needs.  Due to the contradictory facts presented by the parties, it is the opinion of the undersigned that granting Defendants' Motion for Summary Judgment is inappropriate at this time, because to do so would be to make a determination on the credibility of the statements presented, which is solely for the trier of fact to resolve.

Additionally, Defendants propose that in their official capacity they are immune from claims under the Eleventh Amendment.  However, Plaintiff makes it clear in his response to Defendants' brief supporting the motion for summary judgment that he is only suing the Defendants in their personal capacity.  For this reason, the undersigned believes it is unnecessary to address the Eleventh Amendment issue in this report and recommendation.

Finally, Defendants contend that they are immune from suit in their individual capacities based on qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable

in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

- 10 -

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

It is the opinion of the undersigned that the right to minimally adequate sanitary conditions and hygiene, including the right to toilet paper, has been clearly established. *See Gillis v. Litscher,* 468 F.3d 488, 493 (C.A.7 (Wis.), 2006), *Wright v. McMann,* 387 F.2d 519, 526 (C.A.N.Y

1967).  If the facts are as Plaintiff contends, Defendants could not reasonably have believed that denying Plaintiff toilet paper for forty-nine days was lawful.  Therefore, it is the opinion of the undersigned that Defendants are not entitled to qualified immunity in this case.

In summary, in the opinion of the undersigned, Plaintiff has sustained his burden of proof in response to Defendants' motion for summary judgment.  Accordingly, it is recommended that Defendants' motion summary judgment (Docket #17) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 14, 2008