UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEFFREY WOODARD,

        Plaintiff,

                                                File No.  2:06-CV-284

v.

                                                HON. ROBERT HOLMES BELL

UNKNOWN WEBERG and THOMAS
SALO,

        Defendants.
                                      /

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In this 42 U.S.C. § 1983 civil rights action Plaintiff Jeffrey Woodard, a prisoner in the Michigan Department of Corrections ("MDOC"), appearing *pro se*, claims that Defendants Thomas J. Salo and Douglas E. Weberg, MDOC employees, deliberately and without penological justification denied him toilet paper and towels, necessities of civilized human existence, in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  (Dkt. No. 137, Final Pretrial Order ¶ 3, Controverted Facts and Unresolved Issues.)

On November 4, 2008, the Court conducted a non-jury trial of this action.  After a careful review of the witnesses' testimony, the documentary evidence introduced at trial, and the parties' post-trial submissions, the Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

**I.**

In March and April 2006 Plaintiff was a level V prisoner housed on the A-Wing of Cedar Unit, the administrative segregation unit at Alger Maximum Correctional Facility ("LMF").  During this time period Defendants Salo and Weberg were MDOC employees assigned to LMF.  Defendant Salo was an assistant resident unit supervisor ("ARUS") and Defendant Weberg was a resident unit officer ("RUO").

On March 8, 2006, Plaintiff was issued a minor misconduct ticket and was placed on mattress restriction because he continued to place his mattress on top of his footlocker despite being told a number of times to place the mattress on the bed surface because sleeping on his footlocker was not safe. (Def. Ex. B, Mattress Restriction; Def. Ex. C, Minor Misconduct.)

On March 10, 2006, Defendant Weberg requested that Plaintiff be placed on toilet paper restriction because he had used a large amount of toilet paper to make a mattress. (Pl. Ex. 15 & Def. Ex. D, Toilet Paper Restriction; Def. Ex. E, photograph of toilet paper on cell floor; Def. Ex. Z.)  The toilet paper restriction was imposed by Defendant Salo and approved by Deputy Rapelje. (Pl. Ex. 15; Def. Ex. D.)  The restriction indicated that it was to expire on March 20, 2006. (*Id.*)  The restriction specifically stated that Plaintiff was to be provided limited quantities of toilet paper as needed. (*Id.*)

On April 3, 2006, Defendant Weberg issued Plaintiff a minor misconduct and requested that he be placed on towel restriction because Plaintiff continued to cover his cell

door window with a towel despite being told on two different rounds to remove the towel. (Pl. Ex. 16 & Def. Ex. F, Towel Restriction; Ex. G, Minor Misconduct.) The restriction indicated that it was to expire on April 15, 2006. (Pl. Ex. 16, Def. Ex. F.) The restriction specifically stated that Plaintiff was to be provided a towel as needed for showers. (*Id.*).

Policy Directive 04.05.120 (Segregation Standards) provides that restrictions shall be imposed only as long as necessary to address the safety or security concern, and restrictions shall be reviewed at least every seven days by the Warden or Deputy Warden. (Def. Ex. BB.) A list of prisoners on restrictions is compiled and kept in the control room. The list indicates the date the restriction was imposed and the date it is scheduled to expire. (Def. Ex. Z, List of Restrictions.) Magnetic tags regarding restrictions are placed on the prisoner's cell door. (Ex. K, photo of magnetic tags.) The magnetic tags are a reminder to staff regarding the restrictions, but they are not the official designation of the prisoner's status.

Between April 9, 2006, and April 28, 2006, Plaintiff wrote ten documents (letters and affidavits) relating to his toilet paper and towel restrictions. (Pl. Ex. 6-7, 9-13; Def. Ex. P, Q, R, S, T, U, V, W, X, Y. ) His first communication, dated April 9, 2006, but notarized on April 20, 2006, was addressed to RUM Rife:

> Sir. It is my belief that my restriction for toilet-paper has expired today, if in fact there was one ever issued by the deputy. Please check and have this restriction tag removed from this cell door.

(Pl. Ex. 11 & Def. Ex. P, Woodard 04/09/2006 letter to RUM Rife.) On April 17, 2006, Plaintiff requested Deputy Warden Rapelje to "please have your officers remove these two

3

toilet-paper and towel restrictions tags from my cell door. Sgt. McDonald tells me that they both have expired." (Pl. Ex. 12; Def. Ex. P.) On April 28, 2006, Plaintiff wrote to the Warden, Deputy Warden, and Defendant Salo, advising that the expired restriction tags were still on his door and requesting that his "toilet-paper and towel privileges" be restored. (Pl. Ex. 6, 7, 9.)

Plaintiff submitted his affidavit dated April 28, 2006, indicating that on April 28, 2006, at 8:15 p.m., RUO Schertz removed the toilet paper and towel restriction tags from his cell door and informed Plaintiff that his toilet-paper and towel privileges were reinstated. (Pl. Ex. 10; Def. Ex. U.) In a second undated affidavit notarized on May 2, 2006, Plaintiff swore that his privileges were reinstated on April 28, 2006, at 9:18 p.m., but that RUO Schertz did not give him toilet-paper and towels until the following day. (Def. Ex. X.)

In support of his claims Plaintiff presented the testimony of eight inmate witnesses in addition to himself.

Inmate Delvin Conner testified that Plaintiff's restriction tags were on his door long beyond the authorized time period. Conner also testified that Plaintiff asked for toilet paper, but he was never given toilet paper, towels or a mattress during the restriction period. Conner acknowledged he was not there all the time and that Plaintiff could have been given toilet paper when Conner was not present.

Inmate James Lamont Lindsey recalled many restriction tags on Plaintiff's door, but did not recall them being expired and he did not recall Plaintiff ever asking for toilet paper and not getting it.

Inmate Corey Wilferd Brock testified that he had no recollection of Plaintiff being denied toilet paper.

Inmate Rod Branham testified that Weberg did not give Plaintiff toilet paper, but that other guards might have.

Inmate Joshua Ryan Brooks-El recalls Plaintiff asking guards for toilet paper and never receiving any. He testified that Defendant Weberg never gave Plaintiff a towel or toilet paper on Plaintiff's request. He acknowledged that Plaintiff could have received toilet paper while he was asleep or out of his cell. He did not hear Plaintiff complain about expired tags.

Inmate Maurice Erby testified that he heard Plaintiff complaining about the restrictions having expired. He testified that he heard Plaintiff ask Defendants Weberg and Salo for toilet paper and towels and that he never saw Defendants give any toilet paper or towels to Plaintiff. He acknowledged that the guards could have given toilet paper to Plaintiff when Erby was unaware.

Inmate Jeff Lee Lemons testified that he had no recollection of Plaintiff being on restrictions, but he testified that Defendant Weberg never gave Plaintiff toilet paper or towels.

5

Inmate Floyd Jennings, Jr. testified that he heard Plaintiff ask for toilet paper. Jennings assumed Plaintiff was given the toilet paper because that was the procedure for toilet paper restriction.

Plaintiff testified that while he was housed in another prison he was assaulted by a prisoner and requested protection. Plaintiff testified that after he was moved to segregation at LMF, Defendant Salo was not convinced that Plaintiff needed protection. Plaintiff testified that Defendant Salo directed Defendant Weberg to do whatever it took to get Plaintiff to voluntarily leave protective custody and return to the general prison population. Plaintiff testified that in furtherance of Defendant Salo's directions, Defendant Weberg tortured him in numerous ways, by sexually harassing him, by directing cold air into his cell, by taking and destroying his television, by not turning in a work order to repair Plaintiff's blinking light, by placing Plaintiff in a cell without electricity, by delivering Plaintiff's family mail to other prisoners, by accusing Plaintiff over the loudspeaker of being a rat, by giving Plaintiff a feces-contaminated food tray, by placing Plaintiff on food loaf, and, finally, by placing Plaintiff on toilet paper and towel restriction, and leaving him on those restrictions for over thirty days.

Plaintiff understood that prisoners on toilet paper restriction are still allowed to have toilet paper. Nevertheless, Plaintiff testified that between March 10, 2006, and April 28, 2006, no officer gave him toilet paper except Officer Schertz, and that was only one time.

Plaintiff acknowledged that he had stomach problems in 2005 and that he had been

treated with Prilosec. Nevertheless, Plaintiff testified that as a result of the denial of toilet paper he contracted Helicobacter pylori ("H. pylori") in 2006. Plaintiff also testified that he contracted H. pylori as a result of Defendant Weberg's contamination of his food tray.

Plaintiff testified that from April 4 to April 28 he was never given a towel when he showered. Plaintiff testified that sometimes he did not take a shower because it was too cold if he did not have a towel to dry off with. He also testified that he would not take a shower if he had a problem with the officer who offered it, such as Weberg, Schertz, and Parkkila.

Plaintiff acknowledged that he has a mouth and can be insolent, at times, but he testified that he is not that bad a person, that he is not violent, and that he did not deserve what Defendants did to him.

Defendant Salo testified that he made daily rounds of Cedar Unit to pick up legal mail. He interacted with Plaintiff three or four times a week and had a good working relationship with Plaintiff. Defendant Salo provided Plaintiff with paper and carbon for his legal matters and notarized most of Plaintiff's documents. Defendant Salo observed Plaintiff using toilet paper during these rounds and Plaintiff never complained to Defendant Salo that he was being denied toilet paper on request.

Defendant Salo testified that, contrary to Plaintiff's assertions, Plaintiff was not in protective custody at LMF. He was in administrative segregation as the result of threatening behavior and disobeying a direct order.

7

Defendant Weberg testified that between March and September 2006 he worked some of the time in administrative segregation, but he was not a regular on that wing. He testified that he is known as a disciplinarian and that he has written misconducts against Plaintiff and all of Plaintiff's witnesses. Defendant Weberg denied sexually harassing Plaintiff or any of Plaintiff's prisoner witnesses.

Defendant Weberg testified that Plaintiff disliked him and would not talk to him. Defendant Weberg testified that Plaintiff never asked him for toilet paper, that he never refused Plaintiff toilet paper, and that he never instructed others not to give Plaintiff toilet paper. He also testified that he was not responsible for removing the restriction tags from Plaintiff's door. That was the responsibility of the wing officer.

Sandra Shuker is a registered nurse who works for the MDOC and is familiar with the prisoners' medical records. Shuker testified that H. pylori is a common bacterium known to exist for decades in the human body. H. pylori is usually detected through the CEA blood test. Plaintiff refused the CEA blood test on numerous occasions in 2005, so it is possible that Plaintiff had an H. pylori attack in 2005. Plaintiff also had a history of gastrointestinal reflux, for which he was prescribed Prilosec, which would reduce the symptoms of H. pylori.

Transmission of the H. pylori bacterium generally requires direct oral-oral or fecal-oral contamination. Shuker testified that while it might be theoretically possible to purposely infect someone with H. pylori, it is not likely because H. pylori needs stomach mucus to survive and cannot live long outside the human body.

The evidence, reviewed as a whole, does not support Plaintiff's contention that between March 10 and April 28 he was only given toilet paper on one occasion and that he was refused a towel after showering. The evidence clearly established that a toilet paper restriction does not mean that a prisoner does not receive toilet paper; it only means that the prisoner may not have toilet paper stored in his cell. A towel restriction prohibits a prisoner from keeping a towel in his cell while the restriction is in effect. Prisoners are still issued a towel in the public shower area when they take a shower.

There is no evidence to suggest that Plaintiff was not provided with toilet paper on an as-needed basis in March and April 2006. The most convincing evidence on this point is Plaintiff's own written documentation. Plaintiff documented his complaints during this time period in letters and affidavits. Plaintiff did not complain in a single document that his requests for toilet paper were being denied or that he was being denied a towel after showering. He only complained that he was continued on restrictions and that his toilet paper and towel privileges were being denied past the expiration date. Plaintiff's reference to restrictions and privileges is clearly a reference to the restriction on having rolls of toilet paper and a towel in the cell. Plaintiff's letters complained about the denial of the privilege of having these items in his cell. Plaintiff never complained that he was denied the use of toilet paper on request or the use of a towel after showering. As Plaintiff well knew, denial of such items would have violated prison policy. If Plaintiff had been denied toilet paper on request or a towel after showering, he would have indicated as much in his writings.

Plaintiff's testimony is also not credible because the prison policy was to provide toilet paper on request to prisoners on toilet paper restriction. Plaintiff's inmate witnesses confirmed that prisoners on restrictions are routinely given supplies when they are needed. For example, Brooks-El testified that when he was on towel restrictions he received a towel when he went for a shower. Brock testified that when he was on mattress restriction he was given a blanket as substitution. Erby testified that people on restrictions get substitutes when needed. Jennings testified that when a prisoner is on toilet paper restriction the procedure is to just ask an officer and they give you a "nice handful" of toilet paper. There were three shifts each day and three officers on each shift. A guard made the rounds every half hour. The Court does not find it plausible that for 48 days, nine officers each day violated prison policy and refused to give Plaintiff toilet paper on request.

Plaintiff's testimony is also not credible because the majority of Plaintiff's testimony at trial related to matters other than the lack of toilet paper. He used the trial to vent his frustrations against Defendant Weberg rather than to establish facts surrounding his access to toilet paper or towels.

The testimony of those inmate witnesses who testified that Plaintiff was not given any toilet paper while the restriction tags were on his door was not credible. Although these witnesses claimed knowledge that Plaintiff was not given any toilet paper, their recollection of the underlying facts was vague and inconsistent. They did not give any specific factual details about Plaintiff's requests, the guards' denials, or Plaintiff's reaction to the guards'

10

denials. It was often unclear whether they were asserting that Plaintiff was denied toilet paper by all guards or just by Defendant Weberg. It was also unclear whether they were asserting that Plaintiff was denied toilet paper rolls to keep in his cell or that he was denied the use of toilet paper altogether. Notably, none of the inmate witnesses expressed any outrage at Plaintiff not receiving any toilet paper whatsoever.

Defendant Weberg had previously written misconduct tickets on all of Plaintiff's inmate witnesses. These witnesses showed tremendous animosity toward Defendant Weberg. Several of Plaintiff's witnesses accused Defendant Weberg of sexually harassing prisoners. This testimony was not relevant to the issues in this case and did more to undermine the witnesses' credibility because it tended to show that their testimony was focused more on taking revenge against Defendant Weberg than on getting to the truth about Plaintiff's toilet paper or towel restrictions.

Plaintiff has attempted to turn his complaint that he was not given toilet paper privileges, i.e., the privilege of keeping a toilet paper roll in his cell, into a complaint that he was denied toilet paper altogether. The facts simply do not support his claim.

Similarly, Plaintiff's contention that he was denied a towel when he showered is not credible. It was standard practice to provide towels to prisoners on towel restriction when they showered, and none of Plaintiff's letters complaining about the towel restriction suggested that he had been denied a towel after showering.

It is undisputed that Plaintiff's restriction tags were left on his door beyond the time that the restrictions expired. Even if, as Plaintiff argues, the officers followed the tags on the door rather than the prisoner's status as reflected in the log book, and that Plaintiff's restrictions were accordingly continued long after they expired, there is still no credible evidence that Plaintiff was ever denied toilet paper or a towel on an as-needed basis.

Plaintiff has also failed to demonstrate a proximate cause between the toilet paper or towel restriction and Plaintiff's diagnosis with H. pylori. Plaintiff likely had H. pylori prior to the restrictions, and Plaintiff himself was not consistent about the alleged cause of his H. pylori.

## II.

The Eighth Amendment's prohibition against cruel and unusual punishments "proscribe[s] more than physically barbarous punishments." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). When the conditions of confinement compose the punishment at issue, the Eighth Amendment forbids deprivations or conditions that involve the "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

An Eighth Amendment claim contains both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To satisfy the objective component the deprivation must be sufficiently grave. *Id.* To satisfy the subjective component, the officials must have acted with a sufficiently culpable state of mind. *Id.*

The objective component requires the prisoner to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. This determination is made by reference to "contemporary standards of civilized decency that currently prevail in society." *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). In a conditions of confinement case, the Eighth Amendment is concerned only with " deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Accordingly, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The subjective component requires the prisoner to demonstrate that the prison officials acted wantonly, with deliberate indifference to the prisoner's serious needs. *Wilson*, 501 U.S. at 298-99; *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).

Accordingly, to succeed on his Eighth Amendment claim, Plaintiff must establish that Defendants denied him "a single, identifiable necessity of civilized human existence," and that Defendants "acted with a sufficiently culpable state of mind." *Hadix*, 367 F.3d at 525.

For purposes of this action the Court will assume that toilet paper and a towel for drying after showering are necessities of civilized human existence. Nevertheless, Plaintiff has not established that he was denied toilet paper or a towel when it was needed. He has

13

merely established that during the terms of his restrictions he was not able to keep a store of toilet paper or a towel in his cell. It is undoubtedly preferable to have one's own toilet paper and towel supplies in one's cell. Nevertheless, while restrictions on possession of these items in the cell may be harsh or inconvenient, the restriction is not an extreme deprivation and does not rise to the denial of a necessity of civilized human existence.

There is no dispute that the restriction tags remained on Plaintiff's door after the restrictions had expired. This evidence raises the possibility that the restrictions continued to be enforced after they had expired by their terms. Even if this is the case, Plaintiff has not shown that Defendants were responsible for leaving the restriction tags on the door or for enforcing the restrictions after they had expired. Moreover, even if Plaintiff had shown that these Defendants were responsible for the continued enforcement of the restrictions after their expiration, Plaintiff would have established, at best, that Defendants violated prison policy. Such a violation of prison policy, however, does not rise to the level of an Eighth Amendment violation. The restrictions on having toilet paper and a towel in his cell, even if they lasted for the length of time Plaintiff alleges (49 days for the toilet paper restriction and 25 days for the towel restriction) were not disproportionate to the misconduct they were designed to punish, and as stated above, were not sufficiently severe to meet the objective component of an Eighth Amendment claim. In addition, Plaintiff did not establish that he suffered any damages as a result of the toilet paper and towel restrictions.

The Court finds no Eighth Amendment violation. A judgment of no cause of action will accordingly be entered in favor of Defendant Salo and Defendant Weberg.

### III.

At the conclusion of the trial Plaintiff filed a motion to hold an inquiry to ascertain how Defendants' attorney acquired the medical information he used to cross-examine Plaintiff at trial. (Dkt. No. 155.)

Plaintiff placed his health in issue by claiming that he contracted H. pylori as a result of either the toilet paper and towel restriction or as a result of Defendant Weberg's alleged tampering with his food. Prison policy provides that "[h]ealth information shall be released to the Department of the Attorney General . . . as necessary for litigation purposes . . . ." (P.D. 03.04.108(Q)(12).) Plaintiff's medical records were properly obtained to rebut Plaintiff's argument. Accordingly, Plaintiff's motion for an inquiry into Defendants access of his medical files will be denied.

An order and judgment consistent with this opinion will be entered.


Dated: February 6, 2009                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE